**UNITED STATES of America,
Appellee,**

v.

**Thomas George ARNESON, Appellant.**

**No. 20346.**

United States Court of Appeals,
Eighth Circuit.

March 31, 1971.

Lee E. Brophey, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before VOGEL and ROSS, Circuit Judges, and STEPHENSON, Chief District Judge.

ROSS, Circuit Judge.

Selective Service registrant Thomas George Arneson was convicted of failing to comply with an order of his local board to report for and submit to induction into the armed forces of the United States under 50 U.S.C.App. § 462. He was sentenced to the custody of the Attorney General of the United States for a period of two years and filed a timely appeal. We affirm the judgment of conviction.

The evidence shows that Local Board 10, Carver County, Minnesota, ordered Arneson to report for induction on February 4, 1969. Prior to that date Arneson had not made any claim as a conscientious objector.

On February 4, 1969 Arneson reported at the time and place ordered but refused to submit to induction. At the Armed Forces Examining and Entrance Station the defendant handed to the Assistant Processing Officer a typed statement, which he dated and signed, stating his reasons for refusing to be inducted. At the request of the officer, Arneson changed the date to February 5, 1969, since that was the date that he "was being technically inducted."[1]

---

1. The entire statement is as follows:

I, Thomas G. Arneson, on this 5th day of February, 1969, refuse induction into the Armed Forces of the United States of America.

My principal reason for taking such action is my firm belief in the brotherhood of mankind, an irrevocable bond among men of all races and nations to live in peace and understanding, a bond which entails the responsibility of recognizing ones own individual identity and of crediting that recognition to every member of the human species. Mankind's brotherhood can in no way, if the race of man is to survive, be superseded by the ambitions of individuals or groups interested in the destruction of the individual primarily for personal or collective gain.

For too many years, many citizens of the United States have deluded themselves into thinking that they were far superior to any other people or nation on this planet. The subsequent, and logical conclusion to this type of thinking has been the imposition or attempted imposition of what is thought to be the superior way of life on the poor unfortunates who were unlucky enough to be cited by the collective opinion of the United States as misguided or heretical in the true way of life. Thus, in the name of freedom, nations are toppled, people are slaughtered; people whom American opinion calls "the enemy" in order to smooth over the ignorance of deluded patriots.

The American Armed Forces have been the principal servants of those who embrace the philosophy which might be termed *America uber Alles*, people who would have the American citizen forget his ability to think for himself and would extend an invitation to the individual to indulge himself in the dubious pleasure of hiding behind opinoins [sic] and ideas, slogans and traditions which are said to be the American Way. A man who does so condemns himself to the pit of anonymous nothingness.

The American Armed Forces have, for too long a time, been given a free hand in stealing away the individuality of young men: a number is substituted for a name, the ability to love is tempered with the ability to hate and kill. All of this can be carried out against the will of the individual citizen in a gross mockery of justice, where the laws of the land, intended to give a man a sense of uniqueness and insure his rights are used to steal those rights and crush the indiviedual [sic] with a force few people can resist.

The Selective Service Act is an unjust law because it pays little more than lip service to the principles of brotherhood. The law permits the conscripting of individuals against their will, and transforming them into faceless units whose sole purpose will be to serve a machine: a machine which serves to exploit and expend the individual in pursuit of disharmony and prejudice among brothers. Under this law the individual is not permitted to decide who his brother is. He is forces [sic] to suspend his judgment for a regulated amount of time and do only as he is told. A law of this nature is the most abject kind of slavery and tyranny in that it destroys the individual. It lays its ax to the very roots of human dignity.

At Arneson's trial he claimed that this written statement constituted a request for conscientious objector status; that these views had been developing for some time but that they had crystallized after his physical examination and before the time set for induction.

On this appeal the defendant claims that notwithstanding his failure to make a formal claim to the local board, the statement he filed with the inducting officers entitled him to conscientious objector status under the statute, 50 U.S.C.App. 456(j), and that his claim should have been considered by the local board upon receipt of his statement of refusal to be inducted. Arneson further urges that after such consideration by the local board he was entitled to review and appeal from the board's evaluation and decision.

Selective Service regulation 32 C.F.R. 1621.11 provides that a registrant who claims to be a conscientious objector shall offer information in support of his claim on form 150. Arneson never requested nor filed such a form with his local board either before or after his order to report for induction and indeed did not file the required form after his refusal to be inducted.

■ However, even if it be assumed *arguendo* that the delivery of the typed refusal to be inducted to the Assistant Processing Officer could be said to constitute a request to Local Board 10 for conscientious objector status, the document does not meet the tests of the statute, 50 U.S.C.App. 456(j), to qualify it as a valid conscientious objector claim.

In United States v. Seeger, 380 U.S. 163, 173, 85 S.Ct. 850, 858, 13 L.Ed.2d

733 (1965) the Supreme Court noted that the exemption as set forth in 50 U.S.C.App. 456(j) did not cover "those persons who, disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations that war is wrong and that they will have no part of it."

The Court in *Seeger* further set forth that the statute properly excludes those whose opposition to war stems from a "merely personal code," 380 U.S. at 173, 85 S.Ct. 850. Cf. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).[2]

Subsequent to the *Seeger* case, 50 U.S.C.App. 456(j) was amended in 1967 to read in relevant part as follows:

"(j) Nothing contained in this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

This statute was in effect on February 4, 1969.

A careful examination of the document delivered by Arneson to the inducting officer shows that it does not express an opposition to war in any form; that it does not indicate that the views of the defendant result from religious training or belief; that the statement

Thus, I cannot comply any longer with this law or the organization to which it furnishes human beings to be trained for the tasks of servitude and oppression. I choose to throw my abilities and powers with the men and women of this country, the true patriots who are, at the risk of their entire future, willing to work for change. I choose to stand and fight what I feel to be injustice and slavery.

2. See also Mulloy v. United States, 398 U.S. 410 at 418, 90 S.Ct. 1766 at 1772, 26 L.Ed.2d 362 in which the Supreme Court in a footnote states as follows:
 "But the board need not reopen where the claim is plainly incredible, or where, even if true, it would not warrant reclassification, or where the claim has already been passed on, or where the claim itself is conclusively refuted by other information in the applicant's file."

on its face reflects primarily political and sociological views, or a merely personal code of the defendant.

The Court therefore concludes that 1) defendant's claim for conscientious objector status does not meet the test of the statute, and 2) that there was no valid claim for conscientious objector status before the board at the time defendant refused to be inducted. The defendant's claim to be classified as a conscientious objector, offered for the first time at the trial, affords no defense to his conviction. United States v. Rucker, 435 F.2d 950 (8th Cir. 1971); United States v. Lee, 437 F.2d 897 (8th Cir. 1971); United States v. Seeverts, 428 F.2d 467 (8th Cir. 1970).

Judgment affirmed.