**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gary Lynn HARMON, Defendant-**
**Appellant.**

**No. 73–1150.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 13, 1973.

Decided Sept. 11, 1973.
Rehearing Denied Oct. 15, 1973.

William K. Hickey, First Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for plaintiff-appellee.

Sara-Jane M. Cohen, Boulder, Colo., for defendant-appellant.

Before BREITENSTEIN and DOYLE, Circuit Judges, and TALBOT SMITH, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

On November 14, 1972, defendant-appellant was convicted of the crime of knowingly failing to submit to registration as required by the Military Selective Service Act of 1967, 50 U.S.C. App. § 462(a).

The appellant is shown to have been and to be a member of the Jehovah's Witness faith. He was born March 18, 1952 and became 18 on March 18, 1970. Under the pertinent regulations he was obligated to register with Selective Service on or within five days after attaining his 18th birthday. He failed to register at this time, and so in November 1971, the Selective Service Board of Greeley, Colorado, in an effort to get information, sent an inquiry to him on a Local Board Inquiry form. Appellant filled it out promptly, and it reflected that he had not then registered but intended to do so within five days after signing the form.

On March 3, 1972, the appellant was interviewed by an FBI agent in the latter's office. He had been invited to meet with the agent who advised him of his rights and submitted to him a waiver form which he executed. Following this interview, appellant proceeded on his own volition to the Selective Service Local Board office and registered. Appellant had acknowledged to the FBI agent that he had failed to register.

* Of the Eastern District of Michigan, sitting by designation.

Moreover, at the Selective Service office he filled out forms which confirmed this fact.

The indictment charged his failure to register with Selective Service between the dates March 24, 1970 and March 2, 1972.

A suppression hearing was held by the district court with respect to the document appellant executed before the Selective Service Board. Appellant's motions were denied.

Reversal is sought by appellant on the following grounds:

1. The dates March 24, 1970 to March 2, 1972 as the period of violation of the statute rendered the indictment invalid for failure to state an offense.

2. The prosecution was barred because of the invasion of appellant's Fifth Amendment rights against self-incrimination.

3. The pretrial motion to suppress should have been granted.

4. The prosecution was void because the government practiced selective prosecution as a matter of policy.

### I.

In support of his contention that the indictment failed to charge an offense because of the alleged continuing period of violation, appellant relies on the Supreme Court's decision in United States v. Toussie, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). Here the validity of the Selective Service regulation declaring that the offense creates a continuing obligation to register was called into question and the Supreme Court ruled that insofar as it made the offense a continuing one it was void. The Court further ruled that the statute of limitations commenced to run as of the date that the defendant was obligated to register. The effect of the Court's decision was thus to prevent the prosecution of a defendant during an indefinite period of

time. The Court fixed a definite day for the completion of the offense. This was five days after the accused reached his eighteenth birthday. From this decision the defendant argues that the indictment here, since it undertakes to describe a continuing offense, does not state a crime and is void. The exact scope of the case is shown by the language of the Court wherein it said:

It should be emphasized that this conclusion does not mean that the gravity of this offense is in any way diminished. Failure to register is subject to heavy criminal penalties. The only question is whether those penalties must result from a prosecution begun within five years or whether they can be delayed for a longer period. We are not convinced that limiting prosecution to a period of five years following the initial failure to register will significantly impair either the essential function of raising an army or the prosecution of those who fail to register. We do feel that the threat of criminal punishment and the five-year statute of limitations is a sufficient incentive to encourage compliance with the registration requirements. If Congress had felt otherwise it could easily have provided for a longer period of limitations. It has not yet done so.

397 U.S. at 123, 90 S.Ct. at 864. The Court did not undertake to rule on the fact situation such as is here presented. Rather, it held that the only issue was when the statute started to run.

United States v. Owens, 431 F.2d 349 (5th Cir. 1970), considered *Toussie* in relationship to a fact situation like that at bar and upheld the validity of the indictment notwithstanding that it alleged a continuing duty to register.[1]

The Eighth Circuit has taken the view that there is no continuing duty to register after the five-day grace period. *See* United States v. Crocker, 435 F.2d

---

1. The Fifth Circuit reaffirmed this position in United States v. Saunders, 435 F.2d 683 (5th Cir. 1970). *But see* United States v.

Muncaster, 447 F.2d 1367 (5th Cir. 1971), cert. denied, 405 U.S. 979, 92 S.Ct. 1200, 31 L.Ed.2d 255 (1972).

601 (8th Cir. 1971), and United States v. Alarik, 435 F.2d 1349 (8th Cir. 1971).

■ The *Toussie* opinion's holding that the statute of limitations starts to run from the registration date seems inconsistent with the concept that a continuing offense is valid. A U. S. Attorney should think twice before he alleges the offense as a continuing one. Nevertheless, at bar the time allegations are superfluous and do not void the indictment since the defendant was prosecuted within the limitations period.

■ A variance between the date alleged in the indictment and the date of the commission of the offense as shown by the evidence is generally not fatal. *See* United States v. Owens, *supra,* 431 F.2d at 350; Orfield, Federal Procedure Under the Federal Rules § 7:63 (1966). In an early Supreme Court decision, Berger v. United States, 295 U.S. 78, 82–83, 55 S.Ct. 629, 630–631, 79 L.Ed. 1314 (1935), the point was carefully considered and the insubstantiality of such a variance was discussed as follows:

> The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.
>
> . . . . . .
>
> In Washington & Georgetown R'd v. Hickey, 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101, this court said that "no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not

of a character which could have misled the defendant at the trial."

The defendant does not contend that there was a failure to apprise him as to the nature and character of the offense, and this is the important consideration.

■ Also, there is no merit in the appellant's contention that by presenting himself for registration he was compelled to incriminate himself. First, the defendant had been fully warned and he went to the Draft Board on his own volition. Secondly, the offense was long since complete and his registration on a date far beyond the grace period was not an acknowledgment of guilt of another offense because *Toussie* holds that the offense is complete when he fails to register within the five-day period following arrival of his eighteenth birthday.

## II.

### THE MOTION TO SUPPRESS

■ Appellant's next point is that the court should have suppressed the card which he signed and mailed back following the Local Board's inquiry on November 18, 1971. We fail to see that *Miranda* warnings were here necessary since this was not a custody situation or one which was attended by circumstances of pressure and compulsion. *See* Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1967); United States v. Watson, 442 F.2d 1273, 1282 (8th Cir.), cert. denied, 404 U.S. 848, 92 S.Ct. 152, 30 L.Ed.2d 85 (1971); United States v. Kroll, 402 F.2d 221, 223 (3d Cir. 1968), cert. denied, 393 U.S. 1043, 89 S.Ct. 672, 21 L.Ed.2d 592 (1969); Noland v. United States, 380 F.2d 1016, 1017 (10th Cir.), cert. denied, 389 U.S. 945, 88 S.Ct. 308, 19 L.Ed.2d 299 (1967).

■ As to appellant's further contention that the filing of the late registration March 3, 1972 violated his constitutional rights because warnings were not given, we reiterate what we have said above, namely, that he had theretofore

been warned, had waived his rights, and he acted voluntarily. In addition, he was not in custody and there is not the slightest evidence of compulsion, express or implied. *See* United States v. Holmes, 387 F.2d 781, 785 (7th Cir. 1967), cert. denied, 391 U.S. 936, 88 S. Ct. 1835, 20 L.Ed.2d 856 (1968).

Appellant sought to call Mr. Hickey, the Assistant United States Attorney, who was prosecuting the case, in an effort to prove that the government refused to agree to alternate service in lieu of prosecution. Although Mr. Hickey did not testify, he did state that the established policy of the United States Attorney was to examine the forwarded files only for the purpose of ascertaining whether the case was legally sufficient. He further stated that the United States Attorney's office or the Department of Justice would not interfere with the processing of these draft registrants.

 We recognize that if discriminatory enforcement is shown the procedure is unconstitutional and invalid even though the statute itself is valid. However, the appellant has not established from the facts that discrimination existed. The mere presence of selectivity based upon the strength of the case does not establish unconstitutional discrimination. *See* Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

 We have given thought to the proposition, even though it has not been argued, as to the defendant here having been placed in a classification of I–H pending the prosecution. He thus was not allowed to seek a I–O (conscientious objector) classification. However, this does not deprive the defendant of anything because the violation accrued when he failed to register after the grace period had expired. It is obvious that the government decided to prosecute him for the violation which had then accrued. Consequently, he could have gained nothing from a I–O classification. That appellant did not lose any substantial right is also clear from the fact that the district court did not sentence him to confinement but, rather, granted probation conditioned on his performing alternative work. He agreed to perform this work and apparently is now performing it. Accordingly, the appellant's situation differs from that which was presented in Oestereich v. Selective Serv. System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), and Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). In both of these cases the defendant was reclassified I–A and deprived of his exemption as a sanction. Since the instant prosecution is unrelated to a I–O classification and could not have been forestalled thereby, no right of the appellant has been violated.

The judgment of the district court is affirmed.